UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DARLENE GILBERT,

    Plaintiff,

v.

                              Case No.: 2:23-cv-00004-JLB-NPM

WAL-MART STORES EAST, LP,

    Defendant.
_____/

## ORDER

In this Florida state negligence trip-and-fall case, Plaintiff Darlene Gilbert ("Plaintiff" or "Ms. Gilbert") alleges she fell to the ground after her foot got caught on a portion of a price sign located at the banana table's base.  Before the Court is the Motion for Summary Judgment filed by Defendant Walmart Stores East, LP ("Defendant" or "Walmart").  (Doc. 24).  Ms. Gilbert submitted a response in opposition (Doc. 25), and Walmart filed a reply (Doc. 26).  After a careful review of the parties' briefing, the Court concludes that Defendant's Motion is due to be **GRANTED**.

## BACKGROUND

This case arises from Ms. Gilbert's fall in Walmart's produce section located in Cape Coral, Florida, on November 17, 2021.  (Doc. 5 at ¶¶ 4–9).  In her Complaint, Ms. Gilbert alleges that she "tripped and fell as a result of a negligently installed and maintained price display located on or near a produce display, sustaining injuries."  (Doc. 5 at ¶ 8).  Immediately after her fall, Ms. Gilbert

provided a customer incident report to Walmart, in which she stated that her "[f]oot got caught at the banana counter and as [she] walked to [her] cart, [she] fell down." (Doc. 25-1 at 86).

Ms. Gilbert testified during her deposition that, while this was not the Walmart she would typically shop at (Doc. 24-2 at 22), she had shopped at this particular Walmart "[m]aybe three or four" times in the past, and that she went into the produce section on at least some of these visits. (*Id.* at 23). Ms. Gilbert testified that when she arrived at the Walmart on the day of the incident, she proceeded directly to the produce section. (*Id.* at 22). She first picked up two pineapples and then went over to the banana table. (*Id.*). She leaned over the banana table in pursuit of greener bananas and, as she moved to place the bananas she had retrieved into her cart, her foot got caught on a price sign affixed to the base banana table, causing her to fall down. (*Id.* at 23).

When asked whether she observed the price sign prior to the fall, Ms. Gilbert answered that she did not (*id.* at 24), which she attributed to her instead focusing on finding green bananas (Doc. 24-2 at 25). Ms. Gilbert testified that she was neither aware of whether any portion of the price sign was touching the floor prior to her fall nor whether the sign was defective in any way prior to her fall (*id.* at 26). However, Ms. Gilbert explained that after her fall, she saw that "the sign was hanging very low and it had come loose" on the corner that her foot had caught. (*Id.*). Despite this, she later testified that the sign was loose before her fall (*id.* at 27), reasoning that although she "really [didn't] have any knowledge of it being

2

loose prior to [her] hitting [her] leg on it . . . if it wasn't loose, how would [she] hit [her] leg?" (*Id.* at 28).

In response to Defendant's summary judgment motion, Ms. Gilbert points to the following photograph, which was provided by Walmart in discovery:[1]



---

[1] Walmart has provided still images from the video for illustrative purposes. Walmart also provided CCTV footage of the incident.  The CCTV video itself is sealed due to security concerns raised by Home Walmart.  The Court has, however, carefully reviewed that video *in camera* and relies extensively on it throughout this order.

3

(Doc. 25-1 at 91). Ms. Gilbert examined this photo during her deposition, testifying that it depicted the banana table where she fell. (Doc. 24-2 at 57). Ms. Gilbert explained that the banana table included two price signs, but "[t]he one on the left," which she tripped over, "[hung] very low to the ground and . . . [was] not up high like the one on the right-hand side [was]." (*Id.* at 58). When asked if she would have fallen had the price sign she tripped over been situated like the one on the right, she replied that she would not have. (*Id.* at 59–60). Ms. Gilbert also explained that other price signs in the photo, such as the price sign reading "$3.57," included a "Low Price" label and banding around the edges. (*Id.* at 59). When asked whether she would have tripped had the price sign she tripped over been situated like the sign that read "$3.57," Ms. Gilbert replied that she "would not have fallen." (*Id.* at 60).

In its summary judgment motion, Walmart contends that: the banana price sign was not a dangerous condition; there is no record evidence of failure to inspect or maintain the premises; and that even assuming *arguendo* that the banana price sign was a dangerous condition, any duty to maintain or warn would be discharged by the open and obvious doctrine. (Doc. 24 at 8–15). Ms. Gilbert counters these arguments in her response, pointing to the deposition testimony of Walmart's employee, Robert McManus, her own deposition testimony, CCTV footage of the incident, and the still photos provided by Walmart. (Doc. 25 at 10–19). Ms. Gilbert further argues that Walmart is not entitled to summary judgment because the question of whether the banana price sign was a dangerous condition and any issues of foreseeability are fact questions for the jury (*id.* at 14, 17), its submitted

4

evidence is "more than sufficient to submit a fact question to the jury for determination" (*id.* at 11, 17), and the banana price sign did not constitute an open and obvious condition (*id.* at 13–19).

## LEGAL STANDARDS

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A district court must grant a motion for summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299 (11th Cir. 2018) (citation and internal quotation marks omitted). An issue is "genuine" if a rational trier of fact, viewing all of the record evidence, could find in favor of the nonmoving party. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).

In ruling on a motion for summary judgment, courts must "resolve all ambiguities and draw reasonable factual inferences from the evidence in the non-movant's favor." *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1268 (11th Cir. 2014) (citation and internal quotation marks omitted). Both the Supreme Court and the Eleventh Circuit have addressed video evidence in the context of this summary judgment standard.

In *Scott v. Harris*, 550 U.S. 372, 378 (2007), the Supreme Court found error in the lower court's reliance on the plaintiff's (there, the non-movant's) version of events because the "videotape quite clearly contradict[ed] the version of the story told by" the plaintiff. After addressing what the videotape showed in that case, the Supreme Court returned to the summary judgment standard and explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life. Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Id.* at 380–81 (citations omitted).

Following *Scott*, the Eleventh Circuit has explained that it views the facts in light of video evidence "to the extent that it squarely contradicts with [non-movant's] testimonial descriptions." *Baxter v. Roberts*, 54 F.4th 1241, 1257 (11th Cir. 2022). Indeed, the Eleventh Circuit has stated that it has "repeatedly applied

6

[a] preference rule in affirming summary judgment based on objective evidence notwithstanding the presence of some contradictory testimony from the nonmovant elsewhere in the record." *Id.* at 1258 n.12. That said, "[w]here the videos do not answer all the questions or resolve all the details of the encounter, we view the evidence in the light most favorable to [the non-moving party]." *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1269 (11th Cir. 2021).

## DISCUSSION

**I.  Walmart has established that there is no genuine issue of material fact as to Ms. Gilbert's negligence claim.**

Based on the circumstances of Ms. Gilbert's fall gleaned from the video of the fall and all other summary judgment evidence, the Court determines that summary judgment for Walmart is warranted. Indeed, although Ms. Gilbert's fall is regrettable, the Court agrees that there are no genuine issues of material fact precluding summary judgment in this trip-and-fall negligence case.

To establish negligence under Florida law, a plaintiff must show a duty, a breach of that duty, causation, and damages. *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003).[2] The parties appear to agree, at this stage, that Ms. Gilbert was an invitee of Walmart. (*See* Doc. 24 at 7; Doc. 25 at 13); *see also Post v. Lunney*, 261 So. 2d 146, 147–49 (Fla. 1972) (defining an "invitee"). A business owes its invitees two duties: (1) the duty "to use reasonable care to maintain [its] premises in a reasonably safe condition," and (2) the duty "to warn the invitee of

---

[2]   Florida's substantive law applies to this diversity case. *See, e.g., Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132–33 (11th Cir. 2010).

any concealed dangers that the owner knows or should know about, which are unknown to the invitee and cannot be discovered by the invitee through due care." *Friedrich v. Fetterman & Assocs., P.A.*, 137 So. 3d 362, 365 (Fla. 2013) (citation and internal quotation marks omitted).  Ms. Gilbert alleged in her Complaint that Walmart breached both duties.  (*See* Doc. 5 at ¶ 7).

### A.     Duty to warn

As noted, the duty to warn obligates businesses "to warn [its] invitee of any concealed dangers that the owner knows or should know about, which are unknown to the invitee and cannot be discovered by the invitee through due care." *Friedrich*, 137 So. 3d at 365 (citation and internal quotation marks omitted).  Certain conditions, however, are "so obvious and not inherently dangerous that they can be said, as a matter of law, not to constitute a dangerous condition, and will not give rise to liability." *Joseph v. Wal-Mart Stores East, LP*, No. 6:21-cv-1331-GAP-EJK, 2022 WL 18926794, at *3 (M.D. Fla. Dec. 14, 2022) (quoting *Dampier v. Morgan Tire & Auto, LLC*, 82 So. 3d 204, 206 (Fla. 5th DCA 2012)).  Courts examining negligence claims routinely find that conditions are open and obvious when such conditions are a matter of common knowledge or everyday life. *See Circle K Convenience Stores, Inc. v. Ferguson*, 556 So. 2d 1207, 1208 (Fla. 5th DCA 1990) (holding that condition was "so open and obvious, so common and so ordinarily innocuous" that it was not dangerous as a matter of law where plaintiff tripped over joint in gas station parking lot where concrete met asphalt); *Aventura Mall Venture v. Olson*, 561 So. 2d 319, 321 (Fla. 3d DCA 1990) (agreeing with Fifth District's holding in *Ferguson* and affirming summary judgment on same grounds when

plaintiff tripped over sidewalk curb); *Ramsey v. Home Depot U.S.A., Inc.*, 124 So. 3d 415, 419 (Fla. 1st DCA 2013) (affirming summary judgment where plaintiff tripped over wheel stop in the center of a parking space that complied with ADA regulations). *Contra Moultrie v. Consol. Stores Int'l Corp.*, 764 So. 2d 637, 640 (Fla. 1st DCA 2000) (distinguishable on the basis that it is common practice for stores like Walmart to place price signs on display tables and that such signs are designed to alert customers to their presence). Stated simply, price signs like the one here are similarly matters of common knowledge in a retail produce section.

Additionally, both the video evidence and the photographs show that the price sign in question was readily visible from Ms. Gilbert's position. (*See* Doc. 25-1 at 87–91; Doc. 24-3 (sealed video)). Although Ms. Gilbert testified that she did not see the price sign prior to her fall, she does not allege that this was because it was hidden from her field of view; rather, she attributes this to her focus on finding green bananas (Doc. 24-2 at 25) on the table and on her lack of concern for the price of the bananas (*id.* at 24). The Court accordingly concludes that Walmart has established, as a matter of law, that it did not breach its duty to warn. *See, e.g., Joseph*, 2022 WL 18926794, at \*\*3–4 (granting summary judgment on duty to warn, where pallet over which plaintiff tripped bore several bright white and blue signs atop it and therefore was "not concealed and was easily discernable upon the exercise of due care"); *see also Earley v. Morrison Cafeteria Co. of Orlando,* 61 So. 2d 477, 478 (Fla. 1952) ("While the rule is well settled that a business invitee is entitled to expect that the proprietor will take reasonable care to discover the actual condition of the premises and either make them safe or warn him of dangerous

conditions, it is equally well settled that the proprietor has a right to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses.").

### B. Duty to maintain the premises in a reasonably safe condition

Plaintiff argues fact issues preclude this Court's grant of summary judgment on her claim that Walmart breached its duty to maintain the price sign in a reasonably safe condition, namely by allowing it to hang close to the floor. This argument is unpersuasive. Florida case law does not support that the price sign in question is an inherently dangerous condition as a matter of law.

Furthermore, even if the Court were to accept that the price sign was an inherently dangerous condition—which it clearly was not based on a review of the video evidence—Florida negligence law provides that "[s]ome conditions are considered so obvious and not inherently dangerous that they do not, as a matter of law, support liability for the breach of the duty to maintain the premises in a reasonably safe condition." *TruGreen LandCare, LLC v. LaCapra*, 254 So. 3d 628, 631–32 (Fla. 5th DCA 2018) (citations and quotations omitted); *see also Earley v. Morrison Cafeteria Co. of Orlando*, 61 So. 2d 477, 478 (Fla. 1952) (recognizing that a "proprietor has a right to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses"). After careful review of the video capturing Ms. Gilbert walking directly toward the price sign, which utilized large white print on a black background, it was open and obvious to her to exercise reasonable caution and protect herself by employing more careful footing. *See Smith*, 353 So. 3d at 111 (affirming summary judgment to landowner;

10

explaining that even "assuming arguendo" that a landowner breached its duty to maintain the premises in a reasonably safe condition and an unpainted speed bump was an inherently dangerous condition that would cause injury, the speed bump "was so open and obvious, and previously observed by" the plaintiff that a landowner could reasonably expect the plaintiff to protect herself from the purported danger). Simply stated, no genuine dispute of material facts remains, and Plaintiff's failure to maintain the premises claim also fails.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. 24) is **GRANTED**, and Defendant's Motions in Limine (Docs. 19, 27, 28) are **DENIED** as moot. The Clerk of Court is **DIRECTED** to enter judgment accordingly, terminate all deadlines, and close the case.

**ORDERED** at Fort Myers, Florida on August 30, 2024.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE